UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-24052-ALTMAN

**MONIQUE MOISE**,

    *Plaintiff*,

v.

**CONVERGENT OUTSOURCING, INC.**,

    *Defendant*.

_____/

## ORDER

Our *pro se* Plaintiff, Monique Moise, has sued the Defendant, Convergent Outsourcing, Inc., for violating her rights under the federal Fair Credit Reporting Act ("FCRA") and the so-called "Florida Fair Credit Reporting Act," FLA. STAT. § 501.005.[1] *See* Complaint [ECF No. 1] ¶¶ 20–33. Moise claims that Convergent did this by "accessing [her] consumer [credit] report without any . . . permissible purpose[ ]" on "March 31, 2022[.]" *Id.* ¶¶ 11–14.

The Defendant has moved to dismiss, arguing that the Plaintiff "discovered" the allegedly "unauthorized inquiry" on August 6, 2022, but didn't sue until October 21, 2024—outside the two-year FCRA statute of limitations. Motion to Dismiss [ECF No. 5] at 1. The Plaintiff advances two counterarguments: *first*, that the FCRA allows her to sue up to five years after the date of the Defendant's unauthorized inquiry; *second*, that she didn't "discover" the violation until she "receive[d] confirmation [on June 18, 2024] through the Consumer Financial Protection Bureau ("CFPB") that [the] Defendant lacked a permissible purpose" to access her report. Response [ECF No. 13] at 2–3. And now, apparently trying to circumvent the Motion to Dismiss, Moise has moved for leave to

---

[1] The parties seem to agree that § 501.005 is called the "Florida Fair Credit Reporting Act," but it's titled "Consumer report security freeze" and has almost no overlap with the FCRA. To avoid ambiguity, we'll refer to this law by its section number.

amend her complaint. *See* Motion for Leave to Amend [ECF No. 11]. The amended complaint she'd like to file alleges precisely the same facts as the original—though it would add two claims, one for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") and one for common-law intrusion upon seclusion. *See* Amended Complaint [ECF No. 11] ¶¶ 24–28, 32–35.[2] For the following reasons, we **GRANT** the Motion to Dismiss and **DENY** the Motion for Leave to Amend Complaint.

## THE LAW

The Plaintiff has paid the filing fee, so we don't need to screen her Complaint under 28 U.S.C. § 1915. Still, she is proceeding *pro se*. "*[P]ro se* pleadings are held to a more lenient standard than pleadings filed by lawyers," *Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 974 (11th Cir. 2012), but that "leniency does not give a court license to serve as *de facto* counsel for a party or rewrite an otherwise deficient pleading in order to sustain an action," *Curtiss v. Comm'r of Soc. Sec.*, 856 F. App'x 276, 276 (11th Cir. 2021) (cleaned up). *Pro se* litigants cannot "simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim. . . . Judges cannot and must not fill in the blanks for *pro se* litigants; they may only cut some linguistic slack in what is actually pled." *Hanninen v. Fedoravitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (Altonaga, J.) (cleaned up).

## ANALYSIS

The Plaintiff bases her sole federal claim on the permissible-purpose provision of the FCRA, 15 U.S.C. § 1681b. A plaintiff may sue under the FCRA "not later than *the earlier of* (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for [FCRA] liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." § 1681p (emphasis added). The Plaintiff tells us (and the Defendant doesn't disagree) that the "violation that is the basis

---

[2] Instead of filing her proposed Amended Complaint as an exhibit to her Motion for Leave to Amend, the Plaintiff included it in the same document. That's why the docket number is the same for both filings.

for [the Defendant's FCRA] liability occurr[ed]" on March 31, 2022. Resp. at 2–3. So, the statute of limitations for her FCRA claim runs from *the earlier of* (1) two years from when she discovered the violation and (2) March 31, 2027. She admits that she "observed" the Defendant's offending inquiry when she obtained a copy of her Experian consumer credit report on August 6, 2022. *See* Compl. ¶¶ 7–8; Am. Compl. ¶ 10. Two years from then is August 6, 2024. Because that date is earlier than March 31, 2027, she had to bring her FCRA claim by August 6, 2024. *See* § 1681p(1). She didn't; she sued on October 21, 2024. *See generally* Compl. Her claim is therefore barred by the statute of limitations and should be dismissed.

Resisting that conclusion, the Plaintiff wrongly argues that she "could not have reasonably known [that the Defendant's] inquiry violated the FCRA until her investigation concluded" on June 18, 2024.[3] Resp. at 3. Her "investigation" consisted of using the CFPB website to file a complaint, in which she asked the Defendant why it pulled her credit report. Am. Compl. at 11. She got a response eight days later from Transworld Systems Inc. ("TSI")—*not* the Defendant—which told her that "[her] account [had been] transferred to TSI" and that it needed more information to address her CFPB complaint. *Id.* at 12. That's it. Reading the Plaintiff's argument charitably, we think she's asserting that, although she knew of *the inquiry* as of August 2022, she didn't know that she had an *FCRA claim* until June 2024. "But that presumes that a layperson will either have rather sophisticated knowledge of FCRA, or the ability to interpret the law, or have consulted with a lawyer before the claim can accrue. No federal statute of limitations postpones accrual to that extent." *Lindor v. Trans Union LLC*, 2009 WL 10700261, at *9 (E.D.N.Y. Sept. 16, 2009), *aff'd*, 393 F. App'x 786 (2d Cir. 2010). The Plaintiff's time to bring an FCRA claim under § 1681b thus began to run from August 6, 2022, when she discovered the unauthorized inquiry. *See, e.g.*, *Alibris v. ADT LLC*, 2015 WL 5084231, at *9 (S.D. Fla.

---

[3] She says her investigation concluded on June *10*, 2024, Am. Compl. ¶ 17, but we think that's a typographical error. As we'll explain, the response she received on June *18*, 2024, is what she says prompted her to sue.

3

Aug. 28, 2015) (Rosenberg, J.) ("The statute of limitations did not begin to run on these claims until Plaintiff discovered the facts forming the basis for Defendant's alleged violation of these FCRA . . . disclosure requirements, *i.e.*[,] when Plaintiff knew or should have known *that Defendant had obtained a copy of Plaintiff's report*." (emphasis added)).[4] To the extent the Plaintiff wished to further investigate whether there was a permissible purpose for the Defendant's inquiry, she had *two years* to do so. She didn't, so her FCRA claim is time-barred.

Besides, the Plaintiff's investigation didn't yield any smoking gun. All TSI told her was that it needed more information before it could properly respond to her inquiry. The Plaintiff alleges in her Amended Complaint that the Defendant "*admitted* through . . . TSI that it lacked a valid basis for the" March 31, 2022 inquiry. Am. Compl. ¶ 14 (emphasis added). But that's simply not what TSI said. So, this also isn't a case where there's "any material difference between the facts she possessed on or before [August 6, 2022], and those she possessed on [June 18, 2024], . . . the date[ ] she contends the statute of limitations began to run." *Trans Union LLC v. Lindor*, 393 F. App'x 786, 788 (2d Cir. 2010) (affirming dismissal of untimely FCRA claim). Indeed, Moise had *precisely* the same information on August 6, 2022, as she had on June 18, 2024. And, even *if* TSI had told her something new about the inquiry she discovered on August 6, 2022, that new information wouldn't salvage her claim. "To base

---

[4] The Fifth Circuit has likewise held that a plaintiff's FCRA claim was time-barred where that plaintiff discovered in May 2009 that the defendant had obtained his credit report but waited until April 2011 to bring his FCRA suit. *See Mack v. Equable Ascent Fin., L.L.C.*, 748 F.3d 663, 665–66 (5th Cir. 2014). The plaintiff argued that he'd "engage[d] in substantial study and research of the [FCRA] to realize that he'd discovered a violation." *Id.* at 664. But the Fifth Circuit held that the FCRA's two-year "limitations period began to run when [the plaintiff] discovered that [the defendant] had obtained his credit report without his consent." *Id.* at 665. That holding, it explained, "accord[ed] with the general approach under the discovery rule that a limitations period begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation." *Id.* at 665–66; *see also, e.g., Jackson v. Equifax Info. Servs. LLC*, 2015 WL 13649449, at *18 (N.D. Ga. July 29, 2015) ("In this case, each plaintiff learned of the facts giving rise to their [FCRA] claims at the moment they received the mailers at some time between 2008 and 2010, and not when they 'discover[ed][ ] that the mailers they received did not comply with the FCRA,' which they claim was . . . in October 2012[.]"), *report and recommendation adopted*, 2015 WL 13777246 (N.D. Ga. Sept. 11, 2015); *Admore v. Hospice of Palm Beach Cnty., Inc.*, 2021 WL 6926422, at *5–6 (S.D. Fla. Dec. 13, 2021) (Reinhart, Mag. J.) (same holding).

plaintiff's accrual date on a third party's interpretation of the same facts that she [already] knew"—namely, that the Defendant accessed her report on March 31, 2022—"would distort Congress' intent in enacting a discovery-based statute of limitations." *Lindor*, 2009 WL 10700261, at *9–10. On August 6, 2022, the Plaintiff had all the information she needed to bring her FCRA claim: the fact of the inquiry. That's why the statute of limitations began to run on that day.[5]

The Plaintiff cites two cases for her position—neither of which helps her. *See* Resp. at 3. Both cases, in fact, applied the FCRA statute of limitations exactly as we do here. In *Banga v. Chevron U.S.A. Inc.*, the court granted summary judgment against the plaintiff on most of her claims "because she had actual notice of the underlying promotional inquir[ies] [for which she was suing] more than two years before she brought this action." 2013 WL 71772, at *14 (N.D. Cal. Jan. 7, 2013). As we hold here, the *Banga* Court said that the plaintiff was on actual notice—and thus her two-year FCRA statute of limitations began to run—when she received copies of her credit report, which reflected the offending inquiries. *Id.* at *15–17. And, while the *Banga* Plaintiff didn't make the *same* argument as ours does—*viz.*, that the statute of limitations didn't start to run until she'd finished "investigating"—the *Banga* Court rejected a *similar* argument. The plaintiff there argued as to one defendant, Dish Network, "that her statute of limitations against Dish Network did not begin to run until she was aware *of the extent of its violations*, because she did not learn about two [of Dish Network's four] promotional inquiries until October 2010." *Id.* at *8 (emphasis added). But, because merely observing the inquiries was enough to trigger the plaintiff's statute of limitations, the court granted summary judgment for Dish Network as to every promotional inquiry the plaintiff had seen and failed for two years to sue about. Here, the Plaintiff alleges that she saw the offending credit inquiry on August 6, 2022. *See* Compl. ¶¶ 7–8; Am. Compl. ¶ 10. Applying *Banga* thus yields precisely the same conclusion we've already reached: Her two-year statute of limitations began to run on August 6, 2022, and expired on August 6, 2024.

---

[5] Plus, because the Plaintiff completed her "investigation" on June 18, 2024, she could still have sued by her limitations deadline of August 6, 2024.

Likewise, *Jackson v. Equifax Information Services LLC* concluded that the two-year FCRA statute of limitations began to run from the date on which the plaintiffs *received* certain offending solicitations—not when they later acquired "knowledge that the solicitations were violative of the FCRA." 2015 WL 13777246, at *2, *4–5.

The Plaintiff's admitted knowledge of the offending inquiry allows us to dispose of her backstop argument that, even if the FCRA statute of limitations ran, we should equitably toll it because "[the] Defendant's failure to disclose the purpose of its inquiry and lack of transparency delayed Plaintiff's discovery of the violation." Resp. at 3. "[T]raditional equitable tolling principles require a claimant to justify her untimely filing by a showing of extraordinary circumstances." *Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007). Because equitable tolling is an "extraordinary remedy," it's "typically applied sparingly." *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). Often, it's reserved for situations in which the defendant "misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her." *Fowler v. Astrue*, 2010 WL 4038737, at *4 (N.D. Fla. Sept. 24, 2010) (Timothy, Mag. J.), *report and recommendation adopted*, 2010 WL 4038759 (N.D. Fla. Oct. 14, 2010) (Smoak, J.). Our Plaintiff has made clear that she *wasn't* misled about the facts from which her cause of action arose. She alleges, after all, that she observed the offending inquiry on her credit report on August 6, 2022. *See* Compl. ¶¶ 7–8; Am. Compl. ¶ 10. Although she may not have realized until later that the inquiry was potentially unlawful, "[i]gnorance of the law usually is not a factor that can warrant equitable tolling." *Wakefield v. R.R. Ret. Bd.*, 131 F.3d 967, 970 (11th Cir. 1997). The Plaintiff hasn't pled anything in her Complaint (or her proposed Amended Complaint) that would justify departing from this well-settled rule.

We therefore dismiss the Plaintiff's FCRA claim as time-barred. And we won't give the Plaintiff leave to amend because her proposed Amended Complaint unambiguously demonstrates that amendment would be futile. Generally speaking, "a party must be given at least one opportunity to amend before [dismissing] the complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005).

But we needn't grant leave to amend where any such amendment would be futile. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020). ("Although a district court 'should freely give leave [to amend] when justice so requires,' it may deny leave, *sua sponte* or on motion, if amendment would be futile. Leave to amend would be futile if an amended complaint would still fail at the motion-to-dismiss or summary judgment stage." (quoting FED. R. CIV. P. 15(a)(2) (internal citations omitted))). This rule also applies to *pro se* litigants. *See Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) ("When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice. Dismissal with prejudice is proper, however, . . . if a more carefully drafted complaint could not state a valid claim." (internal citations omitted)).

Both the Complaint and the (proposed) Amended Complaint tell us that the Plaintiff obtained a copy of her credit report (and observed the offending inquiry, which had been made on March 31, 2022) on August 6, 2022. *See* Compl. ¶¶ 7–8; Am. Compl. ¶ 10. That she observed the offending inquiry was enough to trigger her two-year FCRA statute of limitations, as we've explained. Try as she might, in other words, her FCRA claim is time-barred—and there's nothing she can do to salvage it. *See Pena v. Raich*, 2023 WL 7182226, at *2 (S.D. Fla. Nov. 1, 2023) (Altman, J.) (dismissing *without* leave to amend a complaint against a federal prosecutor that was—and, even after amendment, would have remained—barred by absolute immunity).

We also dismiss the Plaintiff's § 501.005 claim—this time, *without* prejudice. Section 501.005 "allows a consumer to place a freeze on [her own] credit reports, prohibiting a [consumer-reporting] agency[6] from releasing the consumer report, credit score, or any information contained within the consumer report to a third party without the express authorization of the consumer, except to a person to whom the consumer owes a financial obligation or a subsidiary, affiliate, or agent of the person[.]"

---

[6] As defined in the FCRA, 15 U.S.C. § 1681a(f).

10A FLA. JURIS. 2D CONSUMER PROT. § 6 (citing FLA. STAT. § 501.005). The statute authorizes "a person who is aggrieved by a violation of the provisions of this section [to] bring a civil action" against "any person who willfully [or negligently] fails to comply with [the freeze or] any requirement imposed under this section" for "not less than $100 and not more than $1,000." FLA. STAT. §§ 501.005(16)(a)–(d). The consumer may also seek "punitive damages." *Id.* § 501.005(16)(c). The Plaintiff doesn't allege that she placed a freeze on her credit report or that the Defendant is a *consumer-reporting agency* within the meaning of the FCRA.[7] She thus hasn't stated a claim under this statute.

Although we've dismissed both of the Plaintiff's claims, we don't conclude that her entire action must be dismissed. The Plaintiff brought her case under our federal-question jurisdiction. *See* Compl. ¶ 2; Am. Compl. ¶ 5. Since we've dismissed her FCRA claim, there's no federal question left for us to adjudicate. Ordinarily, we'd decline to exercise our supplemental jurisdiction over leftover state-law claims—including the § 501.005 claim she's brought in the Complaint. *See, e.g., Floyd v. Broward Cnty. Sheriff's Dep't*, 2019 WL 4059759, at *4 (S.D. Fla. Aug. 28, 2019) (Altman, J.). Here, though, our *pro se* Plaintiff alleges that she's a citizen of Florida and that the Defendant is a citizen of Washington. *See* Compl. ¶¶ 4–5; Am. Compl. ¶¶ 8–9. She doesn't tell us the amount in controversy. But, if it's over $75,000, she could amend her complaint to invoke our diversity jurisdiction. *See* 28 U.S.C. § 1332. And, of course, she could amend her complaint to fill in the missing elements of her § 501.005 claim. In the context of a *pro se* lawsuit, "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

Accordingly, we'll permit the Plaintiff to file an amended complaint alleging—if true—that the amount in controversy in this action exceeds $75,000. In the amended complaint, she may re-raise

---

[7] Indeed, in both her Complaint and her Amended Complaint, the Plaintiff does no more than allege that the Defendant is a "*person*" under the FCRA. Compl. ¶ 6; Am. Compl. ¶ 9.

her § 501.005 claim (pleading the missing elements) and plead her intrusion-upon-seclusion and FDUPTA claims. That will give the Defendant a chance to properly oppose those new claims.

After careful review, then, we **ORDER AND ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss [ECF No. 5] is **GRANTED**.

2. The Plaintiff's Motion for Leave to Amend [ECF No. 11] is **DENIED as moot**.

3. Count 1 of the Complaint [ECF No. 1], the Plaintiff's FCRA claim, is **DISMISSED with prejudice**.

4. Count 2 of the Complaint, the Plaintiff's § 501.005 claim, is **DISMISSED without prejudice**.

5. By **February 7, 2025**, the Plaintiff may amend her complaint if she can establish our diversity jurisdiction. If she does, she may re-raise her § 501.005 claim (amending it as we instructed) and assert her intrusion-upon-seclusion and FDUPTA claims.

**DONE AND ORDERED** in the Southern District of Florida on January 16, 2025.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record
Monique Moise, *pro se*